UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TERRENCE BREWER,
   Plaintiff,

vs.                                No. 07-1356

MICHAEL MCCOY, et al.,
   Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the Defendants' Motion for Summary Judgement [d/e 46] and the Plaintiff's response.

## I. BACKGROUND

The Plaintiff filed his lawsuit pursuant to 42 U.S.C. §1983 claiming his constitutional rights were violated by defendants at the Peoria County Jail. On January 29, 2008, the court conducted a merit review of the Plaintiff's complaint and found that he had adequately alleged that Defendants Judy Moss, Carol Closen, Cory Hosea and DaShaune Paul violated his Fourteenth Amendment rights when they failed to protect him from an inmate assault on October 22, 2007. *See* January 29, 2008 Court Order.

## II. FACTS

The Plaintiff did not factually respond to the Defendants' statement of undisputed facts. Therefore, the following facts are taken from the Defendants' motion as well as the exhibits provided by both parties.

Defendant Steven Smith says he is the Peoria County Jail Superintendent. Smith says there is a grievance/complaint procedure available for inmates that was in place during the Plaintiff's incarceration. (Def. Memo, Smith Aff, p. 1) The inmate must first fill out an Inmate Request Form. The procedure states that complaints must be written on an inmate request form and signed by the inmate. The forms will then be "forwarded as addressed." (Def. Ex. G, Att. 1). The inmate is to receive a response within 5 days. If the inmate is not satisfied with the response, he can ask that the answer be reviewed by the Jail Superintendent. (Def. Ex. G, Att. 1).

Smith says he has searched the jail records and found that the Plaintiff submitted a grievance on November 18, 2007 concerning the alleged assault and received a response from the Assistant Superintendent. There was no appeal of this grievance.

Defendant Judith Moss is employed as a Deputy at the Peoria County Jail. Moss says she did not work on September 25, 2007, and did not receive any Inmate Request Forms from the Plaintiff on this date. (Def. Memo, Moss Aff, p. 1) Moss also says she did not receive any Inmate Request Forms from the plaintiff on October 12, 2007. In addition, Moss says she had no conversations with the Plaintiff about his safety or any threats to his safety prior to the October 22, 2007 incident. (Def. Memo, Moss Aff, p. 1).

Dashaune Paul says he is a Correctional Officers at the Peoria County Jail. Paul says he did not work on September 25, 2007 and was not given any forms on this date by the plaintiff. (Def. Memo, Paul Aff., p. 1) Paul says during the relevant time period of this case, he was working the second shift at the jail from 1:30 p.m. to 10:00 p.m. and was assigned to F Pod. The defendant says normally officers remain in their assigned pods. Paul says all in-house matters such as Inmate Request Forms are handled by officers in the specific pod. Therefore, on October 12, 2007, Paul says he was not assigned to H Pod and does not believe he ever went to that pod. (Def. Memo, Paul Aff., p. 1) Paul says he never received any Inmate Request Forms from the plaintiff stating that he feared for his safety. Paul says he was never aware prior to October 22, 2007, that the plaintiff believed he was in any jeopardy.

Cynthia Closen Durham says she is a Sergeant at the Peoria County Jail. The Defendant says at no time prior to October 22, 2007, did she receive any Inmate Request Forms from the plaintiff concerning his safety, nor did he inform her in any other way that he felt threatened. (Def. Memo, Dur. Aff, p. 1). Durham says after the October 22, 2007 incident, she received two Inmate Request Forms from the plaintiff which she responded to. The Defendant has provided copies of the forms which show the Plaintiff received a response the next day.

Defendant Hosea says he is a Correctional Officer at the Peoria County Jail and during the relevant time period worked the first shift from 5:30 a.m to 2:00 p.m. On September 10, 2007, the Defendant says he was assigned to SP Pod which is on the opposite side of the Peoria County Jail from H Pod. The Defendant says officers generally remain in their assigned pods and inmates are not allowed to move to other pods on their own. Hosea says he was not given any Inmate Request Forms from the Plaintiff on September 10, 2007. (Def. Memo, Hos. Aff, p. 2) Hosea says the Plaintiff did not tell him of his fears in any other way prior to the October 22, 2007 incident.

The plaintiff says he does not know where or when he would have given an Inmate Request Form to Defendants Hosea and Paul (Def. Memo, Plain. Aff, p. 11, 23-24)

On October 22, 2007, at about 7:45 a.m, Defendant Hosea says he was serving breakfast to inmates in the H Pod which has four sections. The Defendant says he found the Plaintiff at the door to H4 Pod. The plaintiff said two inmates approached him and one, Terry Bennett, hit him in the mouth after a disagreement over a breakfast tray. The Plaintiff was taken to the hospital due to an injury to his lip. (Def. Memo, Hos. Aff, p. 2-3) Hosea says he did not witness the altercation between the two inmates.

The Plaintiff entered the jail on June 18, 2007. Records indicate the Plaintiff weighed approximately 254 pounds and was six feet one inches tall.(Def. Memo, Smith Aff, p. 2) The Plaintiff estimates that the inmate who struck him, Inmate Bennet, was at least three inches shorter and weighed at least 49 pounds less. (Def. Memo, Plain. Aff, p. 5). The plaintiff received nine stitches in his upper lip as a result of the assault. (Def. Memo, Plain. Aff, p. 5).

## III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

The Defendants first argue that the plaintiff failed to exhaust his administrative remedies for his claim that the officers failed to protect him from an inmate assault on October 22, 2007. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary,* 255 F.3d 446, 450-51 (7th Cir. 2001). The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)

> If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

The Defendants have presented evidence that the Peoria County Jail did have a grievance procedure. The Defendants also point to the Plaintiff's initial complaint. The Plaintiff used a standard complaint form and in the section which asks if he exhausted his administrative remedies, the Plaintiff has written "no." (Comp, p. 5) The next question asks, "[i]f no, explain why not." (Comp, p. 5) The Plaintiff has responded "No grievance procedure: I filed a request slip and wrote grievance on the top of it. Numerous request slips." (Comp, p. 5)

The court notes that the only Inmate Request Slip that has "Grievance" written at the top is dated November 18, 2007 and is addressed to Officer McCoy. In this grievance, the Plaintiff complains that he was attacked by other inmates and received stitches as a result. The Plaintiff says before the attack, he asked three time by Inmate Request Slip to be moved, but his requests were ignored. (Def Memo, Nov. 18, 2007 Req.).

The Defendants argue the grievance does not address the incidents in his complaint because the Plaintiff does not ask why there were no responses to his complaints, nor did he allege wrongdoing on the part of any specific officer. The defendants' argument fails. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, because it is the prison or jail's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v Bock,* 549 U.S. 199, 218 (2007). In this case, the jail's grievance process makes no mention of the details needed. When the grievance process is silent as to the factual specificity required, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v David,* 297 F.3d 646, 650 (7th Cir. 2002). "The primary purpose of a grievance is to notify the prison of a problem and facility its resolution, not to lay groundwork for litigation." *Griffin v Arpaio,* 557 F.3d 117, 1120 (9th Cir. 2009). The Plaintiff's grievance states that he asked three times prior to the assault to be moved because he feared for his life, and this is sufficient to notify the jail of his claim that officers failed to protect him.

However, the question remains whether the Plaintiff fully exhausted his administrative remedies for this grievance. The response on the grievance indicates that Officer McCoy spoke with the Plaintiff about his concerns. The Plaintiff has submitted no evidence that he appealed this response to the Jail Superintendent as required. The Plaintiff did not exhaust his administrative remedies as required for the November 18th grievance.

The court notes that the Plaintiff also sent two Inmate Request forms to Sergeant Closen on the day of the assault, October 22, 2007. However, both of these forms ask that charges be pursued against the inmates who assaulted him. The Plaintiff makes no mention of his failure to protect claim. In addition, the Plaintiff did receive a response to his grievance when he was told that his request was forwarded to detectives for consideration of charges.

In response to the motion for summary judgement, the Plaintiff claims the grievance procedure at the Peoria County Jail was faulty and it was not uncommon for detainees to fail to receive any response to their Inmate Request Forms. The Plaintiff has submitted copies of the three Inmate Request Forms he claims he submitted prior to the assault complaining about the safety of his housing unit. The court notes that there is a dispute between the parties as to whether these forms were ever submitted. The Defendants state that the officers the Plaintiff claims to have given his forms to either were not working on the relevant days or were working in other housing units.

Nonetheless, even if the court assumes the Plaintiff did submit these request forms and did not receive a response, the Plaintiff has still not demonstrated that he properly exhausted his claim that the officers failed to protect him after the October 22, 2007 incident. The Plaintiff has presented no evidence that he filed a grievance on this issue after the assault and appealed it to the Jail Superintendent. Therefore, the court must grant the motion for summary judgement for failure to exhaust administrative remedies.

**IT IS THEREFORE ORDERED that:**

**1) The Defendants' motion for summary judgment is granted for failure to exhaust administrative remedies as required. [d/e 46 ]. The Clerk of the Court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.**

**2) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)c. If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the Plaintiff may also accumulate another strike under 28 U.S.C. 1915(g)**

**3) The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available. If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The Plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full. The Plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**5) The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 25th day of March, 2010.

s/Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE